[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 4, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-11261
Non-Argument Calendar

_____

Agency Nos. A79-453-774, A79-453-775

FIRELLY EIRLEN RIOS-CANO,
MARIANA AGUDELO RIOS,

Petitioners-Appellants,

versus

U.S. ATTORNEY GENERAL,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 4, 2005)

Before TJOFLAT, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Firelly Eirlen Rios-Cano and Mariana Agudelo Rios (collectively

"petitioners"), through counsel, petition for review of an order of the Board of

Immigration Appeals ("BIA") denying their motion to reconsider and to reopen the BIA's earlier affirmance without opinion of the Immigration Judge's ("IJ's") denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA") and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). Petition DENIED.

## I. BACKGROUND

On 12 June 2002, the Immigration and Naturalization Service ("INS")[1] served Rios-Cano, a native and citizen of Colombia, with a notice to appear, charging her with removability under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), for seeking to procure entry into the United States through fraud, and under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), for attempting to enter the United States without possession a valid immigrant visa or other entry document. The INS alleged that Rios-Cano presented herself as a visitor for pleasure with a counterfeit passport. On the same day, the INS also served Mariana, Rios-Cano's minor child, a native and citizen of Colombia, with a

---

[1] On 25 November 2002, President Bush signed into law the Homeland Security Act of 2002 ("HSA"), Pub. L. No. 107-296, 116 Stat. 2135. The HSA created a new Department of Homeland Security ("DHS"), abolished the INS, and transferred its functions to the new department. Because this case was initiated while the INS was still in existence, we refer to the agency as INS.

notice to appear, charging her with removability under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), for being an immigrant not in possession of a valid entry document.

On 31 January 2003, Rios-Cano applied on behalf of herself and Mariana for asylum and withholding of removal and alleged persecution because of her political opinion. In the application, Rios-Cano stated that (1) her family had been threatened by the United Self-Defenses of Colombia ("AUC"), a paramilitary group; (2) her son was almost kidnaped at school; (3) her family has been declared a military objective by the AUC; (4) her husband, a businessman, was forced to leave home for security reasons, and Rios-Cano received several telephone threats intended for her husband; (5) Rios-Cano was threatened by AUC members on several occasions while she was at work; and (6) because of the threats that she had received, Rios-Cano resigned from her job and rejoined her husband in another town.

The 2001 State Department Country Reports on Human Rights Practices ("Country Report") for Colombia also was included in the record. It provided that various paramilitary groups exercised increasing influence during the year, including campaigns to challenge guerilla groups for control over narcotics cultivations and strategically important territories. The Country Report stated that,

"[a]ccording to military estimates, the [AUC] paramilitary umbrella organization [had] a membership of between 8,000 and 11,000 combatants." AR at 180. The Country Report also states that popular support for paramilitary groups was increasing as a result of guerilla violence. It indicated that guerillas collected "war taxes," forced citizens to enter their ranks, forced small farmers to grow illicit crops, and regulated travel, commerce, and other activities. Id. at 181. The Country Report states that guerillas committed several killings during the year, and their targets tended to be local elected officials, candidates for public office, teachers, civic leaders, business owners, peasants opposed to their activities, and religious leaders. Id. at 189.

At an immigration hearing, Rios-Cano admitted the INS's allegations, except for the allegation that she possessed a counterfeit passport. The IJ questioned Rios-Cano regarding the passport, and Rios-Cano testified that the passport was legitimate, but that the visas were counterfeit. Id. at 64-65. The IJ sustained the charge based on Rios-Cano's testimony. Rios-Cano sought asylum, withholding of removal under the INA, and relief under the CAT. At a continuation of the immigration hearing, Rios-Cano testified that her husband was in Colombia. Id. at 71. She explained that her husband had arrived in the United States with her, but that he had been deported back to Colombia. In Colombia,

4

Rios-Cano worked as an administrator for stores that sold leather goods. She testified that she received several telephone threats from the paramilitary, but the threats were directed at her husband. In June 2001, while she was riding public transportation, two men and a woman approached Rios-Cano and told her that she and her husband would be protected if they collaborated with the paramilitary. Id. at 81. In August 2001, two people came into the store where Rios-Cano worked and approached her about giving them money. She did not report this incident to the police. In March 2002, a woman appeared in Rios-Cano's store and attempted to recruit her to join the paramilitary. Id. at 83. Rios-Cano declined, and shortly thereafter, she received a threatening letter stating, "death to snitches." Id. at 84. Rios-Cano destroyed the letter. In May 2002, someone attempted to kidnap Rios-Cano's oldest son from school. She removed her son from school, resigned from her job, and left Medellin, where she was living. Id. at 85. Since Rios-Cano has left Colombia, her mother received a letter from the paramilitaries at her home, and two of her children who stayed in Colombia are in hiding. Id. She testified that she feared that she would be killed immediately by the paramilitary if she returned to Colombia because they had declared her a military objective. Id. at 86.

The IJ also questioned Rios-Cano. She conceded that she was never physically harmed in Colombia, but that she suffered psychologically. Id. at 86.

The paramilitary asked her and her husband for money for a war tax. Id. at 86-87. The paramilitary targeted Rios-Cano because she refused to pay the war tax, recruit others, and follow their ideology. Rios-Cano's husband was a businessman, and he sold leather goods. Nothing had happened to Rios-Canos's mother in Colombia. On cross-examination, Rios-Cano testified that the paramilitary forces who made threats against her husband were "common delinquents." Id. at 88.

The IJ denied petitioners' application for asylum and withholding of removal and ordered them removed to Colombia. The IJ found petitioners' "complaints [were] not 'on account of' a protected ground. Additionally there is no indication that [they] . . . were harmed in any way in Colombia. [They] have failed to establish that anyone in Colombia was interested in them for any of the five statutory grounds for asylum." Id. at 57. The IJ also found that, because petitioners could not establish eligibility for asylum, they could not meet the higher requirements for withholding of removal under the INA. Id. at 58. Finally, the IJ found that petitioners were not eligible for relief under the CAT and noted that they were estopped from claiming that the authorities would consent to torture because Rios-Cano testified that she had not reported any of the previous incidents to the police. Id. at 58-59.

6

Petitioners, through counsel, filed a notice of appeal to the BIA and argued that the IJ (1) erred by denying their asylum application because the testimony established that Rios-Canos was persecuted on account of a protected ground by members of the paramilitary; (2) abused his discretion by arbitrarily rejecting concrete, credible evidence; and (3) abused his discretion by determining that petitioners did not qualify for asylum and withholding of removal. In a brief in support of their appeal, petitioners argued that (1) the evidence in the record established their refugee status, and (2) the IJ abused his discretion by denying their application for asylum and withholding of removal. The record does not contain a response from the government. The BIA affirmed the IJ's decision without opinion, pursuant to 8 C.F.R. § 1003.1(e)(4).

Petitioners filed a motion before the BIA to reconsider its decision. In the motion to reconsider, they argued that new evidence existed in support of their claims and that their case should be remanded to the IJ for consideration of the new evidence. Specifically, petitioners asserted that Rios-Cano's husband had disappeared and that he was last seen on 13 September 2004. Petitioners also pursued their previous arguments concerning their entitlement to asylum and withholding of removal. Petitioners included several documents in support of their motion to reconsider. A sworn statement by Rios-Cano entitled "Special

7

Power" indicated that Rios-Cano was separated from her husband, although it is unclear what that means. AR at 12. Another sworn statement by Rios-Cano entitled "Urgency of Recognition" appears to be an authentication of Rios-Cano's identity. Id. at 15. An additional document indicates that Rios-Cano reported her husband missing on 12 November 2004. Id. at 18. Finally, petitioners submitted a document containing a photograph of Rios-Cano's husband and a statement that he had been missing since 13 September 2004. Id. at 21.

The government filed a motion in opposition to the motion to reconsider and argued that (1) the purported new evidence submitted by petitioners did not relate to their claims for asylum and withholding of removal; (2) "[a]lthough it is unfortunate that [Rios-Cano's] husband is missing, there is no evidence to show that this event is in any way related to her claim for asylum"; and (3) petitioners had not revealed any errors of fact or law in the BIA's earlier affirmance without opinion. Id. at 3.

The BIA treated petitioners' motion as a motion to reopen or reconsider and denied it. Noting that motions to reconsider must be supported by pertinent case precedent and predicated on a factual or legal defect in the earlier decision, the BIA held that petitioners failed to raise any substantial issues that would satisfy the standards for reconsideration. Id. at 2. As for the motion to reopen, the BIA

8

found that,

> [w]hile the respondent has reported that her husband in Colombia has been reported missing, the circumstances surrounding his disappearance are unclear. There is no ascertainable nexus between the husband's alleged disappearance and an interest on the part of the Colombian government to persecute the respondent, or on the part of any group which the government is unable or unwilling to control, to harm her.

Id. On appeal, petitioners argue that our court has jurisdiction to consider their asylum and removal claims and that the BIA abused its discretion to reconsider its affirming the IJ's removal order, denial of asylum, and withholding of removal, and its denial of petitioners' motion to reopen immigration proceedings.

**II. DISCUSSION**

A. Jurisdiction Over Asylum and Withholding of Removal Claims

Petitioners argue that the BIA erred by affirming the IJ's denial of their claims for asylum and withholding of removal. The government responds that we do not have jurisdiction to consider petitioners' underlying asylum and withholding of removal claims because petitioners did not seek judicial review of the BIA's order by filing a petition for review.

We "'are obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking.'" Cadet v. Bulger, 377 F.3d 1173, 1179 (11th Cir. 2004) (citation omitted). While we generally have jurisdiction to review final

9

orders of removal, the petition for review must be filed within thirty days of the date of the final order of removal. See INA § 242(a)(1), (b)(1), 8 U.S.C. § 1252(a)(1), (b)(1). An order of removal becomes final when the BIA dismisses a petitioner's appeal. 8 C.F.R. § 1241.1(a). We have held that, "[s]ince the statutory limit for filing a petition for review in an immigration proceeding is 'mandatory and jurisdictional,' it is not subject to equitable tolling. Furthermore, the filing deadline is not suspended or tolled by the fact that [the petitioner] filed a [timely] motion to reopen the removal proceedings . . . after issuance of the final order of removal." Dakane v. U.S. Attorney Gen., 371 F.3d 771, 774 n.3 (11th Cir. 2004) (per curiam) (citing Stone v. INS, 514 U.S. 386, 405, 115 S.Ct. 1537, 1549 (1995)).

Petitioners filed their petition for review more than thirty days after the BIA's final order of removal. Accordingly, to the extent that petitioners argue that the BIA erred in affirming the IJ's denial of asylum and withholding of removal, we do not have jurisdiction to review those claims because petitioners did not file a timely petition for review of the BIA's final removal order. The petition for review, however, was timely as to the denial of the motion to reconsider or to reopen and, thus, we have jurisdiction to consider petitioners' claims in that regard.

10

B. Denial of Motion for Reconsidersideration

Petitioners argue that we should remand their case to the IJ for consideration of new evidence, specifically evidence that Rios-Canos's husband recently disappeared in Colombia. This appears to be an argument that the BIA erred in denying their motion to reconsider, which the BIA also construed as a motion to reopen.

We review the BIA's denial of a motion for reconsideration for abuse of discretion. See Assa'ad v. U.S. Attorney Gen., 332 F.3d 1321, 1341 (11th Cir. 2003). A motion for reconsideration "shall specify the errors of law or fact in the previous order and shall be supported by pertinent authority." INA § 240(c)(5)(C), 8 U.S.C. § 1229a(c)(5)(C). "Judicial review . . . is limited to determining 'whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious.'" See Garcia-Mir v. Smith, 766 F.2d 1478, 1490 (11th Cir. 1985) (per curiam) (citation omitted) (addressing a motion to reopen). Motions to reconsider are disfavored, especially in a deportation proceeding, "where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." INS v. Doherty, 502 U.S. 314, 323, 112 S.Ct. 719, 724-25 (1992).

Under the regulations, a motion for reconsideration must specify "the errors

11

of fact or law in the prior [BIA] decision." 8 C.F.R. § 1003.2(b)(1). "'A motion to reconsider asserts that at the time of the Board's previous decision an error was made.'" Zhao v. United States Dep't of Justice, 265 F.3d 83, 90 (2d Cir. 2001) (citation omitted). When the BIA reconsiders one of its prior decisions, "it takes itself back in time and looks at the case as though a decision had never been entered. Thus, if it grants the motion, the Board considers the case anew as it existed at the time of the original decision." Id.

Petitioners do not present any specific legal or factual errors committed by the IJ or support their allegations with pertinent authority. See 8 C.F.R. § 1003.2(b)(1). Therefore, the BIA did not abuse its discretion by denying the motion for reconsideration.

C. Denial of Motion to Reopen Removal Proceedings

The BIA's denial of a motion to reopen removal proceedings "is a final order of deportation reviewable in the Court of Appeals." Ka Fung Chan v. INS, 634 F.2d 248, 252 (5th Cir. Feb. 1981). We review the BIA's denial of a motion to reopen for abuse of discretion, and "'the BIA's discretion is quite broad.'" Gbaya v. United States Attorney Gen., 342 F.3d 1219, 1220 (11th Cir. 2003) (per curiam) (citation omitted). The abuse of discretion standard applies to all motions to reopen, "regardless of the underlying basis of the alien's request [for relief]."

12

INS v. Abudu, 485 U.S. 94, 99 n.3, 108 S.C. 904, 909 n.3 (1988). Furthermore, "the tenor of the Attorney General's regulations . . . plainly disfavor[s] motions to reopen," and "the reasons for giving deference to agency decisions on petitions for reopening or reconsideration in other administrative contexts apply with even greater force in the INS context." Id. at 110, 108 S.C. at 914-15. Thus, we will affirm the Board's denial of a motion to reopen unless its decision is "'arbitrary, irrational or contrary to law.'" Ontiveros-Lopez v. INS, 213 F.3d 1121, 1124 (9th Cir. 2000) (citation omitted).

A motion to reopen must

state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material. . . . A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him or her and an opportunity to apply therefore was afforded at the former hearing, unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing.

8 C.F.R. § 1003.2(c)(1). Regarding motions to reopen, the Supreme Court has held that

[t]here are at least three independent grounds on which the BIA may deny a motion to reopen. First, it may hold that the movant has not

13

established a prima facie case for the underlying substantive relief sought. . . . Second, the BIA may hold that the movant has not introduced previously unavailable, material evidence. . . . Third, in cases in which the ultimate grant of relief is discretionary (asylum, suspension of deportation, and adjustment of status, but not withholding of deportation), the BIA may leap ahead, as it were, over the two threshold concerns (prima facie case and new evidence/reasonable explanation), and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief.

Abudu, 485 U.S. at 104-05, 108 S.C. at 912.

Petitioners challenge the denial of the motion to reopen on the ground that "the relief is sought on the basis of circumstances that have arisen subsequent to the hearing," namely, the alleged disappearance of Rios-Cano's husband. 8 C.F.R. § 1003.2(c)(1). Petitioners' motion for reconsideration included evidence that Rios-Cano's husband had disappeared, but they did not establish that the new evidence was related to their claims for asylum and withholding of removal. Thus, the evidence presented by petitioners was not "material" to their asylum and withholding of removal claims, and the BIA's decision was not "arbitrary, irrational or contrary to law." 8 C.F.R. § 1003.2(c)(1); Ontiveros-Lopez, 213 F.3d at 1124. Therefore, the BIA did not abuse its discretion by denying the petitioners' motion to reopen.

14

## III. CONCLUSION

Petitioners have sought review of the BIA's denial of their motion to reconsider and to reopen its earlier affirmance without opinion of the IJ's denial of asylum and withholding of removal.  As we have explained, we are without jurisdiction to review the BIA's affirming the IJ's denial of asylum and withholding of removal because petitioners did not file a timely petition of the BIA's final removal order.  Our review of the BIA's denial of petitioners' motion to reconsider and reopen shows that the BIA did not abuse its discretion.

**PETITION DENIED.**