[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 19, 2003
THOMAS K. KAHN
CLERK

No. 02-15098
Non-Argument Calendar

Agency Docket No. A73-177-621

PATRICK GBAYA,

Petitioner,

versus

UNITED STATES ATTORNEY GENERAL,
IMMIGRATION AND NATURALIZATION SERVICE,

Respondents.

Petition for Review of a Final Decision of
the Board of Immigration Appeals

**(August 19, 2003)**

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Petitioner Patrick Gbaya appeals from the decision of the Board of

Immigration Appeals ("BIA") denying his "Motion to Reconsider, Re-open and to

Administratively Close" his removal proceedings. Gbaya argues that the BIA's denial of his motion was an abuse of discretion because he had shown that he suffered from ineffective assistance of counsel during his original appeal to the BIA.

"This Court reviews the BIA's denial of [a petitioner's] motion to reopen his deportation order for abuse of discretion. In this particular area, the BIA's discretion is quite broad." Anin v. Reno, 188 F.3d 1273, 1276 (11th Cir. 1999) (per curiam) (internal quotation marks and citations omitted).

Upon thorough review of the record as well as careful consideration of the parties' briefs, we find no abuse of discretion and affirm.

The material facts of this case are not in dispute. Gbaya is a native and citizen of Sierra Leone, who came to the United States as a non-immigrant visitor on January 12, 1992, with permission to remain in the United States until July 11, 1992. On March 30, 1999, the Immigration and Naturalization Service issued a Notice to Appear to Gbaya, charging him with removability pursuant to 8 U.S.C. § 1227(a)(1)(B).

At a hearing before an immigration judge ("IJ") on September 7, 1999, Gbaya conceded that he was removable, but requested asylum, withholding of deportation, and, in the alternative, voluntary departure. Gbaya presented

2

evidence that his father was a traditional tribal ruler in Sierra Leone and that if Gbaya returned to Sierra Leone, he would be targeted by rebel groups for persecution because of his relation to his father.

Although the IJ acknowledged that a return to Sierra Leone would involve the "threat of violent confrontation between tribes and rebels," he was unconvinced that Gbaya had proven, as he must, that the threat was based on "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); see INS v. Cardoza-Fonseca, 480 U.S. 421, 423, 107 S. Ct. 1207, 1208, 94 L. Ed. 2d 434 (1987). Instead, the IJ found that the threat faced by Gbaya is endemic to Sierra Leone's civil war generally. The IJ also concluded that Gbaya had not established that his fear of returning to Sierra Leone applies countrywide. Accordingly, the IJ denied Gbaya's request for asylum and withholding of removal and instead granted him voluntary departure.

Gbaya's attorney filed a timely Notice of Appeal to the BIA on March 8, 2000. On the notice, the attorney indicated that a separate written brief or statement would be submitted. On November 12, 2001, a day before the brief was due, Gbaya's attorney filed a "Motion for Extension of Time to File Brief," in which he stated that "in order to prepare a detailed, comprehensive brief in this matter, thoroughly covering the errors of fact and law by the Immigration Judge,

3

Counsel seeks a two week extension in which to finish and submit the Opening Brief." The motion was granted and the attorney was given until December 17, 2001, to file his brief. He never did. Instead, on the day after the brief was due, he moved to withdraw as counsel, cryptically stating that "Respondent has not fully met his obligations in terms of his representation by this office." Gbaya claims that his attorney withdrew because Gbaya owed him $221.

On January 31, 2002, the BIA summarily dismissed Gbaya's appeal for failure to file a separate written brief, pursuant to 8 C.F.R. § 3.1(d)(2)(i)(D).[1] On March 1, 2002, Gbaya, through new counsel, filed a motion to reconsider. Gbaya alleged that his original attorney had been ineffective because the attorney's actions had prevented his appeal to the BIA from being heard on its merits. Gbaya also alleged that his original attorney had failed to inform him of his eligibility for Temporary Protected Status, ("TPS") to which certain Sierra Leone natives are entitled. See Immigration and Naturalization Service, Extension of the Designation of Sierra Leone Under the Temporary Protected Status Program, 66 Fed. Reg. 46029 (Aug. 31, 2001). A successful application for TPS might have prevented Gbaya's impending removal.

---

[1]This regulation has since been redesignated and can now be found at 8 C.F.R. § 1003.1(d)(2)(i)(E).

The BIA denied Gbaya's motion to re-open his proceedings, holding that he had failed to fulfill the procedural requirements for such claims set forth in Matter of Lozada, 19 I.&N. Dec. 637, 638-39 (BIA 1988), aff'd, 857 F.2d 10 (1st Cir. 1998). In that case, the BIA held:

> A motion based upon a claim of ineffective assistance of counsel should be supported by an affidavit of the allegedly aggrieved respondent attesting to the relevant facts. ... [T]hat affidavit should include a statement that sets forth in detail the agreement that was entered into with former counsel with respect to the actions to be taken on appeal and what counsel did or did not represent to the respondent in this regard. Furthermore, before allegations of ineffective assistance of former counsel are presented to the Board, former counsel must be informed of the allegations and allowed the opportunity to respond. Any subsequent response from counsel, or report of counsel's failure or refusal to respond, should be submitted with the motion. Finally, if it is asserted that prior counsel's handling of the case involved a violation of ethical or legal responsibilities, the motion should reflect whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not.

Id. at 639. The BIA found that Gbaya had not fulfilled any of the above criteria. He submitted no affidavit attesting to the relevant facts and his agreement with his former counsel. He did not inform his former counsel of the allegations, nor did he give him an opportunity to respond. Lastly, although he claimed to have filed a

5

complaint with the Office of Disciplinary Counsel of the Georgia State Bar Association, he presented no evidence that he had in fact done so. The BIA accordingly denied his motion. Gbaya now appeals.

It is well established that "[a]liens enjoy the right to the effective assistance of counsel in deportation proceedings." Mejia Rodriguez v. Reno, 178 F.3d 1139, 1146 (11th Cir. 1999). "[T]o establish the ineffective assistance of counsel in the context of a deportation hearing, an alien must establish that his or her counsel's performance was deficient to the point that it impinged the 'fundamental fairness' of the hearing." Id. This Court has never been called on to determine whether the BIA may require that aliens first satisfy Lozada's procedural requirements before their ineffective assistance of counsel claims may be heard. However, every other circuit to have addressed this issue has held that it is not a per se abuse of discretion for the BIA to use the Lozada requirements. See Xu Yong Lu v. Ashcroft, 259 F.3d 127, 133-34 (3d Cir. 2001); Hernandez v. Reno, 238, F.3d 50, 55-56 (1st Cir. 2001); Lara v. Trominski, 216 F.3d 487, 497-98 (5th Cir. 2000); Lata v. INS, 204 F.3d 1241, 1246 (9th Cir. 2000).

Although our sister circuits agree that the BIA may require aliens to satisfy the three part Lozada test, they disagree as to how strictly the BIA may enforce those requirements. For example, the Seventh Circuit has upheld a strict

6

enforcement of Lozada, stating that the BIA may deny a motion to reopen, even where an alien has satisfied two out of three Lozada requirements. See Stroe v. INS, 256 F.3d 498, 503 (7th Cir. 2001). On the other hand, the Ninth Circuit has held that "[w]hile the requirements of Lozada are generally reasonable, they need not be rigidly enforced where their purpose is fully served by other means." Castillo-Perez v. INS, 212 F.3d 518, 526 (9th Cir. 2000). Rather, where "the facts are plain on the face of the administrative record, the requirements of Lozada are not dispositive." Id. at 525 (internal quotation marks omitted); see also Xu Yong Lu, 259 F.3d at 133 ("There are inherent dangers, however, in applying a strict, formulaic interpretation of Lozada.").

In this case, we need not decide whether the BIA may enforce strict compliance with Lozada or must also accept substantial compliance. Gbaya has achieved neither. As the BIA correctly found, Gbaya has not submitted a sworn affidavit attesting to the relevant facts of his ineffective assistance claim, nor has

he provided his former counsel with notice and an opportunity to respond.[2] This cannot be considered substantial compliance.

Gbaya asks us to apply the Ninth Circuit's reasoning in Castillo-Perez to the facts of his case in order to find that the BIA abused its discretion. He argues that it is "plain on the face of the record" that his attorney was ineffective because his attorney promised to submit a comprehensive brief to the BIA on November 12, 2001, and instead withdrew from the case a day after the brief was due. Essentially, Gbaya is arguing that he need not comply at all with Lozada because Lozada is designed to weed out meritless claims and his claim has obvious merit.

We disagree. Although it may be true that an examination of the record would reveal the ineffectiveness of Gbaya's counsel, the entire rationale behind the Lozada requirements is to prevent the BIA from having to examine the record in each and every ineffective assistance of counsel claim it receives. The Lozada requirements are not unduly onerous to Gbaya, yet he would have us remove the burden of complying with Lozada from his shoulders entirely, only to instead

---

[2]Lozada's third requirement is that "if it is asserted that prior counsel's handling of the case involved a violation of ethical or legal responsibilities, the motion should reflect whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not." Lozada, 19 I & N Dec. at 639. Here, Gbaya's motion states that he submitted a grievance against his former counsel to the state disciplinary authorities on February 28, 2002, and a copy of the grievance is appended to his motion. We need not decide whether this statement, without any evidence supporting it, constitutes compliance with the third prong of Lozada, because having already failed to comply with at least two out of three Lozada requirements, Gbaya would not be in substantial compliance with Lozada either way.

8

demand from the BIA the much more onerous task of examining the record in each and every case, just in case it can determine from the record whether there was ineffective assistance of counsel. This we decline to do.

The BIA does not abuse its discretion by filtering ineffective assistance of counsel claims through the screening requirements of <u>Lozada</u> and Gbaya has not substantially complied with those requirements.

**AFFIRMED**.