[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 29, 2005
THOMAS  K. KAHN
CLERK

_____

No. 04-16630
Non-Argument Calendar
_____

Agency No. A97-661-461

QING YUN ZHENG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 29, 2005)

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

Qing Yun Zheng, through counsel, petitions for review of the Board of

Immigration Appeals' ( "BIA's") order denying her motion to reopen immigration

proceedings following the BIA's affirmance of the immigration judge's ("IJ's")

decision denying asylum and withholding of removal under the Immigration and

Nationality Act ("INA"), and for relief under the United Nations Convention on

Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment

("CAT"). Zheng argues that the BIA (1) abused its discretion in denying Zheng's

motion to reopen, and (2) violated Zheng's due process rights by failing to

articulate fully its reasons for denying this motion.[1] For the reasons set forth more

fully below, we denying Zheng's petition.

On December 15, 2003, Zheng, a native and citizen of the People's Republic

of China ("PRC"), entered the United States without possessing a valid entry

document. On December 24, 2003, the Immigration and Naturalization Service

("INS") issued a Notice to Appeal, charging Zheng with being an immigrant not in

possession of a valid entry document or documents of identity and nationality, in

---

[1] To the extent Zheng's arguments can be construed as challenging the BIA's affirmance of the IJ's decision denying Zheng's claims for asylum and withholding of removal under the INA, and for relief under the CAT, she failed to file a timely petition for review from that order; thus, we lack jurisdiction to review it. See 8 U.S.C. § 1252(b)(1) (petition for review must be filed within 30 days of the date of the final order of removal); see also Dakane v. U.S. Attorney General, 399 F.3d 1269, 1272 n.3 (11th Cir. 2005) (explaining that the statutory deadline for filing a petition for review in an immigration proceeding is "mandatory and jurisdictional," and that a filing deadline is not suspended or tolled by the fact that a petitioner files a timely motion to reopen the removal proceedings (quotations and citations omitted)).

2

violation of INA § 212(a)(7)(A)(i)(1), 8 U.S.C. § 1182(a)(7)(A)(i)(I).[2]  During a

hearing before the IJ, Zheng conceded removability as charged.

On April 7, 2004, Zheng filed an application for asylum and withholding of

removal under the INA, and for relief under the CAT.  Zheng alleged in this

application that she had suffered past persecution and had a well-founded fear of

future persecution on account of the fact that officials of the PRC had forced her to

have two abortions.

On this same date, Zheng also appeared before the IJ for an evidentiary

hearing on her application for relief.  At this hearing, Zheng asked the IJ for a

continuance to give her time to retain counsel.  The IJ, however, denied this

request, explaining that (1) Zheng had two previous attorneys who had withdrawn;

(2) the IJ had granted Zheng a continuance in March 2004; and (3) the IJ had

informed Zheng in March 2004, that he would proceed in April 2004, even if

Zheng did not have an attorney present.

Zheng then testified as to the following facts.  In September 2002, Zheng

entered into a "Chinese traditional marriage" with her husband, Wu Bao Chen, but

---

[2]  On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.  This legislation created a new Department of Homeland Security, abolished the INS, and transferred its functions to the new department. Because this case was initiated while the INS still was in existence, this opinion refers to the agency as the INS.

she did not legally marry him because he was under the age required for marriage.

During this same time period, Zheng became pregnant, after which she did not

attend her required "female examination" and hid at her mother's house.

However, after a neighbor observed Zheng vomiting and reported Zheng's

suspected pregnancy, family-planning officials came to Zheng's mother's house

and asked Zheng to have an abortion. When Zheng refused to consent to this

procedure, these officials arrested Zheng's husband, detained him for two weeks,

and tortured him. To end this torture, Zheng consented to the abortion.

Zheng further testified that, after she again became pregnant in May 2003,

she failed to attend a required "female examination." In August 2003, a village

official arrived at her house, arrested her, took her to the hospital for the

examination, and forced her to have an abortion. Zheng, however, escaped from

the hospital before the doctors could insert an intrauterine device ("IUD"). In

October 2003, after learning that family-planning officials were searching for

Zheng, her uncle arranged for her to go to the United States and she left the PRC.

Other than this testimony, Zheng stated that she had no other evidence to present at

this asylum hearing.[3]

---

[3] When the IJ asked Zheng what evidence, if any, she had to introduce at the hearing,
Zheng specifically responded "[t]he evidence there in, in China." The IJ then found that Zheng
had been given "plenty of time to try to get [the evidence]," and he informed Zheng that the
hearing still would proceed.

The IJ denied Zheng's application for relief from removal, based on his determinations that Zheng's testimony was not credible, and that she had failed to offer any other credible and corroborating evidence. Zheng filed a timely appeal with the BIA, arguing that the IJ erred by (1) failing to grant her additional time to obtain counsel, and (2) relying on minor inconsistencies in finding that her testimony was not credible. On July 28, 2004, the BIA affirmed the IJ's decision without opinion and adopted it as the "final agency determination."

On October 25, 2004, Zheng filed the instant motion to reopen her removal proceedings. In support of this motion, Zheng claimed that she wished to present the following "new evidence": (1) her Chinese Resident ID card; (2) her Chinese notorial birth certificate; (3) her own affidavit;[4] (4) affidavits signed by her mother and husband; and (5) her husband's Chinese Resident ID card. Zheng argued that this "new evidence" was "previously unavailable" because (1) she was detained during the removal proceedings; (2) her prior counsel failed to advise her on the need for corroborative evidence; (3) she lacked counsel during her asylum hearing;

---

[4] In Zheng's affidavit, she asserted, among other things, that (1) she was forced to undergo two abortions in the PRC; (2) she left the PRC to avoid being forced to wear an IUD and being subjected to further harm; (3) she arrived in the United States in December 2003; (4) on her arrival, her sponsor helped her to retain an attorney to file an asylum claim; (5) her former two attorneys withdrew as counsel due to unknown reasons; (6) her former attorneys did not inform her that she needed to obtain corroborating evidence; (7) she found it "very difficult" to contact persons while in detention; (8) she could not obtain another attorney before her asylum hearing; and (9) she believed she was prejudiced by her lack of counsel at this hearing.

5

and (4) she was not aware of her burden of proof in establishing her eligibility for asylum relief.

In November 2004, the BIA denied Zheng's motion to reopen. In support, the BIA explained that (1) Zheng had not met her burden of showing that the additional evidence was previously unavailable and could not have been presented at his first hearing, and (2) she had not followed the required procedures for asserting a claim of ineffective assistance of counsel.[5]

On appeal, Zheng first argues that the BIA abused its discretion in denying her motion to reopen based on its finding that she failed to show that the "new evidence" that she had sought to introduce was previously unavailable. Zheng specifically contends that, although this evidence was "technically in existence at the time of the hearing," it was not "available or able to be presented." Zheng asserts that the BIA's determination that she also was attempting to raise a claim of ineffective assistance of counsel showed that it "might not have even understood the meaning and purpose" of her motion to reopen. Zheng also argues that the BIA

_____

[5] The BIA in Matter of Lozada, 19 I & N Dec. 637, 639 (BIA 1988), set forth certain procedures a petitioner must follow before filing a motion to reopen based on ineffective assistance of counsel. Zheng, however, has abandoned by not raising in her petition for review any challenges to the BIA's rejection of her motion to reopen based on ineffective assistance of counsel. See Sepulveda v. U.S. Attorney General, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). Indeed, Zheng explicitly states on appeal that she (1) had not attempted to raise such a claim in her motion to reopen, and (2) had not followed the procedures outlined in Lozada. Thus, we will not include additional facts relating to this finding.

6

abused its discretion by giving only a "conclusory" or "summary" reason for denying her motion. Finally, Zheng contends that the BIA did not give any alternative reasons for denying her motion to reopen, and that remand is necessary because (1) her testimony was credible and consistent, (2) she established prima facie eligibility for asylum, and (3) the IJ's decision denying her relief from removal was based primarily on the lack of corroborating evidence.

We review the denial of a motion to reopen removal proceedings for an abuse of discretion. Dakane, 399 F.3d at 1272 n.2. "In this particular area, the BIA's discretion is quite broad." Gbaya v. U.S. Attorney General, 342 F.3d 1219, 1220 (11th Cir. 2003). Judicial review is limited to determining "whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." Garcia-Mir v. Smith, 766 F.2d 1478, 1490 (11th Cir. 1985).

At a minimum, three independent grounds exist upon which the BIA may rely in denying a motion to reopen: "(1) failure to establish a prima facie case; (2) failure to introduce evidence that was material and previously unavailable; and (3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1302 (11th Cir. 2001). Rephrasing this second ground, the regulations

provide that a motion to reopen proceedings "shall not be granted unless it appears

to the [BIA] that evidence sought to be offered is material and was not available

and could not have been discovered or presented at the former hearing." 8 C.F.R.

§ 1003.2(c)(1). Moreover, in explaining § 1003.2(c)(1), we have stated as follows:

> [t]he provision is framed negatively, by directing the Board not to reopen unless certain showings are made. It does not affirmatively require the [BIA] to reopen the proceedings under any particular condition. Thus, the regulations may be construed to provide the [BIA] with discretion in determining under what circumstances proceedings should be reopened.

Al Najjar, 257 F.3d at 1301 (internal quotations and marks omitted).[6]

Here, the BIA determined that the "new evidence" on which Zheng was

relying in her motion to reopen, that is (1) her Chinese Resident ID card; (2) her

Chinese notorial birth certificate; (3) her own affidavit; (4) affidavits signed by her

mother and husband; and (5) her husband's Chinese Resident ID card, could have

been presented at her asylum hearing in April 2004. Indeed, Zheng's Chinese

Resident ID card was issued in 2002, and her notorial birth certificate was issued in

January 2004. Although Zheng's husband's Chinese Resident ID card was not

issued until May 2004, Zheng failed to explain why her husband could not have

---

[6] The Supreme Court has analogized the burden on an applicant seeking to reopen immigration proceedings based on newly discovered evidence to that imposed on a criminal defendant seeking a new trial based on such evidence, and it has emphasized that the moving party bears a "heavy burden." See INS v. Abudu, 485 U.S. 94, 110, 108 S.Ct. 904, 914, 99 L.Ed.2d 90 (1988).

applied for its issuance before that hearing date. Similarly, although the affidavits signed by Zheng, Zheng's mother, and her husband were not in existence before April 2004, they involved attestations that either were unrelated to Zheng's application for relief from removal, or were known by the affiants before the date of the asylum hearing.

To the extent Zheng argued in her motion to reopen that this evidence, nevertheless, was "unavailable" because of (1) her detention, (2) her prior counsel's failure to advise her on her burden of proof, and (3) her own lack of knowledge on this burden, she has failed to cite to authority to support any of these arguments. Regardless, although Zheng was detained pending her April 2004 asylum hearing, and although the IJ denied her motion to continue this hearing, the IJ had continued the hearing in March 2004, at which time he also had informed Zheng that she would not be granted any additional continuances. Zheng only argued in support of her April continuance motion that she was seeking to obtain counsel. Moreover, Zheng failed to explain why her sponsor—the person who had helped Zheng obtain counsel initially—could not also have helped her obtain the supporting documentation at issue.

To the extent Zheng also is arguing that this evidence was "previously unavailable" because her prior counsel misadvised her, Zheng has conceded that

9

she failed to properly preserve a claim of ineffective assistance of counsel by not following the procedures outlined in Lozada. See Lozada, 19 I & N at 639. Finally, although Zheng is contending that she was not aware of her burden of proof, this assertion neither explains why this information was "previously unavailable," nor does it change the fact that the applicant carries the burden of proving eligibility for asylum, withholding of removal, and relief under the CAT. See 8 C.F.R. § 208.13(a) (asylum); 8 C.F.R. § 208.16 (withholding of removal and relief under the CAT). Thus, Zheng failed to show that this evidence was "not available and could not have been discovered or presented" at the time of her asylum hearing. See 8 C.F.R. § 1003.2(c)(1); see also INS v. Doherty, 502 U.S. 314, 323, 112 S.Ct. 719, 724-25, 116 L.Ed.2d 823 (1992) (discussing that motions to reopen are disfavored, especially in removal proceedings, because, as a general matter, "every delay works to the advantage of the [removable] alien who wishes merely to remain in the United States"). We conclude that the BIA did not abuse its discretion in denying Zheng's motion to reopen the removal proceedings.

Zheng also argues in her petition that, whether or not the BIA abused its discretion in denying her motion to reopen, it violated her due process rights by failing to articulate fully its reasons for denying this motion. Zheng asserts in support of this argument that the BIA's summary finding that she had not shown

that the "new evidence" was previously unavailable (1) does not reflect why it reached this determination, and (2) "forces [us] to guess as to the theory underlying the [BIA's] decision  in violation of Zheng's procedural due process rights."

We review constitutional challenges de novo.  Lonyem v. U.S. Attorney General, 352 F.3d 1338, 1341 (11th Cir. 2003).  "To establish due process violations in removal proceedings, aliens must show that they were deprived of liberty without due process of law, and that the asserted errors caused them substantial prejudice."  Id. at 1341-42.

In reviewing a due process challenge in an analogous appeal where a single member of the BIA affirmed an IJ's decision without an opinion, pursuant to 8 C.F.R. § 1003.1(e)(4)(i),[7] we determined in Lonyem that an alien is not entitled per se to a full opinion by the BIA.  Id.[8]  We explained that, "[t]he fact that a single

_____

[7] Pursuant to 8 C.F.R. § 1003.1(e)(4)(i), a single BIA member shall affirm an IJ's decision, without an opinion, if:

> the Board Member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that
> (A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation; or
> (B) The factual and legal issues raised on appeal are not so substantial that the case warrants issuance of a written opinion in the case.

8 C.F.R. § 1003.1(e)(4)(i).

[8]   In reaching it determination in Lonyem, this Court cited to the Supreme Court's decision in Vermont Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978), that "administrative agencies should be

11

BIA member issued an affirmance without opinion [did] not demonstrate that he did not review the facts of [the petitioner's] case. Id. We further determined that the petitioner failed to present evidence showing that: (1) the BIA member who reviewed the case deviated from the regulation's requirements when he determined that the case warranted a summary affirmance, or (2) the petitioner was substantially prejudiced by the BIA's issuance of an affirmance without opinion. Id. We, therefore, concluded that the petitioner's due process claims were without merit. Id.

Similar to the facts in Lonyem, Zheng has not cited to evidence in the record showing that the BIA, in denying her motion to reopen, failed to follow its regulations. Moreover, as discussed above, the BIA reasonably could have concluded that it was clear from the face of the "new evidence" on which Zheng was relying that this evidence was not "previously unavailable." See 8 C.F.R. § 1003.2(c)(1). Zheng also has failed to explain how she was substantially prejudiced by the BIA's failure to more fully articulate why it was denying her motion to reopen. See Lonyem, 352 F.3d at 1342.

Moreover, we have concluded that the failure to receive discretionary relief does not amount to a deprivation of a liberty interest. See Mejia-Rodriguez v.

---

free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." See Lonyem, 352 F.3d at 1342.

Reno, 178 F.3d 1139, 1146-48 (11th Cir. 1999) (eligibility for suspension of deportation); see also Telfel v. Reno, 180 F.3d 1286, 1300 (11th Cir. 1999) (explaining that "expectation does not equate with liberty or property, and a constitutionally protected interest cannot arise from relief that the executive exercises unfettered discretion to award"). As discussed above, the BIA's discretion in granting a motion to reopen is "quite broad." See Gbaya, 342 F.3d at 1220. We also have determined that the decision whether to grant asylum—relief Zheng was seeking as part of her removal proceedings—is a matter of discretion. See Sepulveda, 401 F.3d at 1231.[9] Thus, at least to the extent Zheng's due process claim was based on her desire to reopen her proceedings and to seek asylum relief, this claim also is without merit because she failed to establish a deprivation of a liberty interest.

Accordingly, we conclude that the BIA, in denying Zheng's motion to reopen, neither abused its discretion, nor violated Zheng's due process rights. We, therefore, deny Zheng's petition.

**PETITION DENIED.**

---

[9] Unlike asylum relief, which is discretionary, withholding of removal and relief under the CAT, where warranted, is mandatory. See Antipova v. U.S. Attorney General, 392 F.3d 1259, 1265 n.2 (11th Cir. 2004) (withholding of removal under the INA); see also 8 C.F.R. § 208.16(d)(1) (mandatory language in regulation governing withholding of removal under the INA and relief under the CAT).

13