[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 16, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14556
Non-Argument Calendar

_____

BIA No. A96-100-366

ELDER ALFREDO ORTEGA BARBAS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

**(February 16, 2006)**


Before ANDERSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Elder Alfredo Ortega Barbas, a Colombian national, petitions for review of the Board of Immigrations Appeals's (BIA) order denying his motion to reopen his proceedings in light of new evidence. On appeal he argues that the BIA abused its discretion by denying the motion. For the reasons set forth more fully below, we deny the petition.

Barbas last entered the United States on or about September 20, 2000, and filed an application for asylum and withholding of removal in October 2002. On December 10, 2002, Barbas was served a notice to appear charging him with removability for being an alien present in the United States without having been admitted or paroled, or who arrived at a time or place other than designated by the Attorney General, in violation of INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). In his application, he sought asylum on the basis of his political opinion and membership in a particular social group. Barbas feared that he would face "psychological torture by right-wing extremists" if returned to Colombia "for defending of Colombian workers' labor and human rights."

In an attachment, Barbas explained that right-wing extremists persecuted him for his collaboration with the "Union Worker's Federation Union," (UWFU) which defended workers' labor and human rights in Colombia. Barbas explained that his uncle, who was Vice President of the UWFU, was killed by the United Self-Defense Forces of Colombia (AUC) for, inter alia, participating in a strike,

2

and Barbas and his father had received phone threats eventually leading to Barbas receiving a death threat in July 2000. Barbas feared that, if he returned to Colombia, he would be murdered just like his uncle. Included with his application was the death certificate and autopsy report of his uncle, Jorge Luis Ortega Garcia, showing that the uncle was murdered by gunfire. Barbas included several articles reporting on the death of Ortega, and also submitted the "death sentence sent to [him] presumably by rightwing extremists."

At his hearing, Barbas admitted the allegations in the notice to appear and conceded removability. Barbas testified that he left Colombia because he feared that the paramilitaries who murdered his uncle would do the same to him. The breaking point for him came in July 2000, when he received a "sympathy card." He testified that he was a member of the "Central Labor Union," and that his uncle had been the vice president of that union until paramilitaries murdered him on October 20, 1998. Barbas was only an activist and attendee of the meetings, but after his uncle's murder, began receiving telephone calls admonishing him to stop supporting the union. Barbas did not stop attending meetings, and in July 2000, received the aforementioned sympathy card at his home. After calling his home in Colombia, Barbas learned that his family continued to receive phone calls asking about him and threatening to "bring justice against" him. Barbas did not notify the police because his uncle had notified the police, who did nothing for him, resulting

3

in his death, and he further testified that he did not believe he would be safe anywhere in Colombia. Later, Barbas admitted that he had no documentation to prove he was a member of the union because he was not on its "official list," but rather attended meetings only.

The Immigration Judge (IJ) rendered an oral decision, first denying Barbas asylum because he failed to file within one year of arriving in the United States and could not meet an exception. Next, he found that Barbas's testimony regarding his membership in a union was not credible and lacked corroboration. He further found that Barbas had failed to provide detailed and specific testimony regarding the threats made against him, and there was no evidence that anyone had attempted to physically harm him. The IJ next found that Barbas's family continued to reside in Colombia without any evidence of having been harmed or threatened, despite the fact that they, too, were related to the uncle who was killed by paramilitaries. Barbas's claim that his family members were safe because they were not union members was rejected based on the finding that Barbas also was not a member. He also noted that, if the paramilitaries murdered Barbas's uncle in the doorway of the home and were as violent as Barbas indicated they were, it did not make sense that they would have allowed Barbas to live for 18 months while he continued to engage in activities that they wanted him to cease. On the basis of the foregoing, the IJ found that Barbas could not meet the lower burden of proof for asylum, and,

4

therefore, the IJ denied him withholding of removal and CAT relief as well.

Barbas appealed to the BIA, which on April 25, 2005, adopted and affirmed the IJ's decision, finding that Barbas had failed to establish the existence of any circumstances that would excuse his failure to meet the one-year deadline for filing for asylum, and that he had failed to demonstrate that he was entitled to withholding of removal or relief under the CAT. No petition for review of this decision was filed.

On May 25, 2005, Barbas filed a "motion to reconsider" with the BIA, and included "new evidence" from an "expert witness who knows about the situation of Colombia," and who asserted that a person like Barbas would suffer persecution for being a member of a particular social group and helping the "syndicalism." Included was the declaration of "James D. Wilets," a professor of international and comparative law at Nova Southeastern University, Shepard Broad Law Center. Wilets taught and conducted research throughout South America, and, after reviewing Barbas's asylum applications, declared that, while he could not verify the truth of the information contained in the application, Barbas's fears appeared to be well-supported. Wilets stated that Barbas's union membership made him susceptible to harm because of his involvement in political activity, the past murder of a family member for that same political involvement, and the continuing threats against his family. Barbas also included a May 3, 2005, article from a

5

Colombian newspaper indicating that a representative of an electric union, who had resigned from active participation but maintained membership, was assassinated.

The BIA construed Barbas's "motion to reconsider" as a motion to reopen his case on the basis of new evidence that he wished to have considered. The BIA found that, with respect to Wilet's declaration, Barbas had failed to demonstrate that the evidence was previously unavailable and could not have been presented to the IJ. It further found that Wilet's opinion was based in part on information he could not verify, and because the IJ's findings were affirmed, in part, on Barbas's lack of credibility and corroborating evidence, Wilet's declaration assumed as fact a claim that had already been deemed incredible. The BIA also found that Barbas's article did not prove the truth of his claim that he, himself, was persecuted on account of his union activism, and, therefore, the article was immaterial. Accordingly, Barbas's motion was denied on July 22, 2005. A petition for review of that decision was timely filed on August 19, 2005.

On appeal, Barbas argues that the BIA erred by denying his motion to reopen, and further erred by finding that he was not a victim of past persecution and did not have a well-founded fear of future persecution or was more likely than not to be tortured if returned to Colombia.

As a preliminary matter, to the extent Barbas argues that the BIA's April 25, 2005, affirmance of the IJ's order of removal was in error, we lack jurisdiction to

6

address the issue because a petition for review of that decision was not timely filed. We have jurisdiction over a "final order of removal," so long as the petition for review is filed within 30 days. INA §§ 242(a)(1) and (b)(1), 8 U.S.C. §§ 1252(a)(1) and (b)(1). A motion to reopen does not toll the statutory deadline for filing a petition for review. Dakane v. U.S. Att'y Gen., 399 F.3d 1269, 1272 n.3 (11th Cir. 2005). Because Barbas never filed a petition for review of the final order of removal on April 25, 2005, we lack jurisdiction to review it and, therefore, any argument concerning the propriety of that order is dismissed.

We will review only the BIA's decision, except to the extent that it expressly adopts the IJ's opinion. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted). "This Court reviews the BIA's denial of [a petitioner's] motion to reopen his deportation order for abuse of discretion. In this particular area, the BIA's discretion is quite broad." Gbaya v. U.S. Att'y Gen., 342 F.3d 1219, 1220 (11th Cir. 2003). Pursuant to 8 C.F.R. § 1003.2(a), "[t]he decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a). Furthermore, the BIA shall not grant a motion to reopen unless "it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at

7

the former hearing.  8 C.F.R. § 1003.2(c)(1).

We have held that, "[a]t a minimum, there are at least three independent grounds upon which the Board may deny a motion to reopen: 1) failure to establish a prima facie case;  2) failure to introduce evidence that was material and previously unavailable; and 3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." Al Najjar, 257 F.3d at 1302.

Here, it cannot be said that the BIA abused its discretion by denying Barbas's motion to reopen, especially in light of ground (2) above, the failure to introduce evidence that was material and previously unavailable.  As to the declaration by an expert, as the BIA correctly noted, there was no showing that this declaration was previously unavailable to Barbas, and, furthermore, the BIA also noted the overarching problem with the declaration's conclusions, i.e., that they were predicated on the assumption of a credible claim, which both the BIA and the IJ had rejected.  Second, as to the newspaper article, while the article was published after Barbas's claim had been denied, making it previously unavailable, nothing contained in the article provided material support to Barbas's claim of past persecution or future persecution.  Not only does the article not identify the perpetrators of the crime as the same as those who Barbas claimed persecuted him, but the victim in the article was a bona fide member of the union.  Both the BIA

8

and the IJ doubted Barbas's membership in the union because he was not on its official list and he had no documentation to prove his membership. In short, the article was not material to Barbas's claim, and the BIA, therefore, did not abuse its discretion by denying Barbas's motion to reopen. Accordingly, we deny Barbas's petition for review.

**PETITION DENIED.**