[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10598
Non-Argument Calendar
_____

Agency No. A205-675-190


DINORA ORTEGA MORALES,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 18, 2018)

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Dinora Ortega Morales seeks review of the Board of Immigration Appeals' ("BIA") decision denying her motion to reopen removal proceedings based on a claim of ineffective assistance of counsel. The BIA denied the motion to reopen because it was untimely and because Morales had not established a reasonable probability that, but for counsel's errors, the outcome of her removal proceedings would have been different. After careful review, we deny the petition for review.

## I.

Morales, a native and citizen of Honduras, entered the United States in June 2012 on a six-month tourist visa. She hired an attorney, Teresa Martinez-Alonso, and then filed an application for asylum, withholding of removal, and relief under the Convention against Torture ("CAT") in October 2012.

Morales sought asylum and withholding of removal based on her nationality and membership in a particular social group. In an addendum to her application, Morales explained that she had fled Honduras because she was being targeted and threatened by individuals who had killed her brother after he found out about corrupt practices at his place of work, the National Port Company ("NPC"), which was a government entity in charge of commercial importation and exportation of freight.

An asylum officer interviewed Morales and her husband and denied the asylum application. Her visa expired in December 2012 and, shortly thereafter,

Morales was issued a Notice to Appear charging her as removable for having overstayed her visa.    Morales conceded removability and presented her applications for relief to an Immigration Judge ("IJ"), who held a merits hearing in January 2014 at which Morales was represented by Martinez-Alonso.

Morales and her husband both testified at the hearing.  They explained that they had owned a telecommunications and security business in Honduras before fleeing to the United States following the murder of Morales's brother.  According to their testimony, Morales's brother worked as a truck driver for a company that handled the delivery of shipping containers for the NPC.  The company was owned by René Maradiaga Panchamé, the sub-director of the Honduran National Police.  At some point, Morales's brother found out that the company was importing and exporting contraband through the port.  He began to fear for his life, and he told Morales to stay away from him so she would not be connected with him.

On January 1, 2011, a man followed Morales's brother to the Moraleses' home and then spoke with her husband.  This man, referred to by Morales and her husband as the "coyote," said he oversaw drug shipments for the company owned by Maradiaga Panchamé.  He asked Morales's husband if he had security footage of a murder that had occurred in front of the home, and he indicated he had committed the murder.  One week later, the coyote approached Morales as she was getting out of her car and asked her about her brother's delivery activities.  She

told him she didn't know anything, and nothing further happened. About a week after that, the coyote murdered her brother and his boss on the street near the Moraleses' home.

Morales and her husband further testified that, when they went to identify her brother's body at the morgue, four strange men approached and began asking questions about her brother's death. Morales and her husband claimed that they knew nothing. Terrified about these events, Morales traveled to the United States for six months to wait for things to calm down. She returned to Honduras in November 2011. Meanwhile, after her brother's death, her father began receiving death threats against her over the phone, and her father told her of the threats. Because the threats had not stopped, Morales secured a United States visa and left Honduras in June 2012. Her father continued to receive threatening phone calls against her, and he advised her not to come back. No other family member still living in Honduras had been threatened or harmed.

The IJ denied Morales's applications for asylum, withholding of removal, and CAT relief. The IJ determined that Morales and her husband testified credibly but that she failed to prove her eligibility for relief. The IJ first found that the threatening phone calls to Morales's father did not amount to persecution because Morales was never physically harmed or threatened directly and there was no

4

detail about the threats in the phone calls to her father. The IJ also found it unlikely that Morales would continue to be targeted if she returned to Honduras.

The IJ further determined that Morales failed to establish a nexus between any past or future persecution and a protected ground, specifically her membership in a particular social group (her family). At best, according to the IJ, Morales established that her brother was killed because of his work and his knowledge of corruption involving the NPC. The IJ reasoned that, because the motive for the murder was her brother's knowledge of corruption, the coyote was interested in Morales not because of her familial relationship but rather because of her potential knowledge of what her brother had discovered. Noting the lack of evidence showing that any of Morales's other family members—apart from her father—had been targeted or threatened, the IJ concluded that Morales had failed to establish that she would be targeted on account of membership in a particular social group. While the IJ credited Morales's evidence that the company for which the coyote worked was connected to the national police and that there was corruption in the NPC, the court was not persuaded that this evidence showed that her brother's murder was anything other than a "criminal act[] . . . not based upon membership in a particular social group."

Finally, the IJ found that Morales failed to show that it was more likely than not that she would face torture to which the government consented if returned to

5

Honduras. The IJ noted that, while the coyote may have worked for the sub-director of the national police, Morales had not indicated or alleged that the sub-director "was in any way involved with the murder of her brother and would threaten her." Having denied her applications for relief, the IJ ordered Morales removed to Honduras.

In August 2015, the BIA dismissed Morales's appeal and affirmed the IJ's decision denying her applications for asylum, withholding of removal, and CAT relief. The BIA broadly concluded that the record supported the IJ's resolution of Morales's claims. Morales did not ask this Court to review the BIA's decision.

Sometime later, Morales consulted another attorney and, in March 2017, filed a motion to reopen her removal proceedings based on her former counsel's ineffective assistance. She asserted that former counsel, Martinez-Alonso, was deficient in numerous ways—including failing to prepare Morales for the hearing, failing to ask appropriate questions at the hearing, failing to submit proof of her claim, failing to have her sister testify and corroborate her account, and failing to establish the Honduran government's involvement—and that she was prejudiced as a result. She submitted a personal affidavit recounting many of these same complaints. Though she acknowledged that her motion to reopen was untimely, she maintained that equitable tolling applied because she filed the motion within 90 days of discovering former counsel's ineffective assistance.

The BIA denied Morales's motion to reopen. The BIA determined that the motion was untimely and it declined to apply equitable tolling, noting that Morales had failed to provide details about the delay in filing her motion to reopen. Further, the BIA determined that she had not proffered any facts or evidence, beyond what was before the IJ, to establish that she was prejudiced due to former counsel's ineffectiveness. In particular, the BIA stated that, with regard to her applications for asylum and withholding of removal, Morales had not demonstrated "that the harm she fears would be on account of one of the protected grounds." As a result, the BIA found that there was no reasonable probability of a different result. Morales now petitions this Court for review of the denial of her motion to reopen.

## II.

We review the BIA's denial of a motion to reopen for an abuse of discretion. *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009). Motions to reopen are "particularly disfavored." *Id.* "Our review is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner." *Id.*

Motions to reopen removal proceedings ordinarily must be filed within 90 days of the final administrative decision. *Id.*; 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). The 90-day deadline is a non-jurisdictional claim-processing rule subject to equitable tolling. *Avila-Santoyo v. U.S. Att'y Gen.*, 713

F.3d 1357, 1365 (11th Cir. 2013) (*en banc*).  To establish equitable tolling, the movant must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *See id.* at 1363 n.5 (quotation marks omitted).

It is well established in this Circuit that "[a]liens enjoy the right to the effective assistance of counsel in deportation proceedings" where counsel has been obtained.  *Gbaya v. U.S. Att'y Gen.*, 342 F.3d 1219, 1221 (11th Cir. 2003).  That right is a component of the right to a fair hearing under the Fifth Amendment's Due Process Clause.  *Dakane v. U.S. Att'y Gen.*, 399 F.3d 1269, 1273 (11th Cir. 2005).

A claim of ineffective assistance of counsel may serve as the basis for a motion to reopen.[1]  *Id.*  To establish ineffective assistance in the context of a

---

[1] The BIA generally requires motions to reopen based on ineffective assistance to satisfy the three procedural requirements established in *Matter of Lozada*.  *Dakane*, 399 F.3d at 1274.  According to *Lozada*,

> A motion to reopen or reconsider based upon a claim of ineffective assistance of counsel requires (1) that the motion be supported by an affidavit of the allegedly aggrieved respondent setting forth in detail the agreement that was entered into with counsel with respect to the actions to be taken and what representations counsel did or did not make to the respondent in this regard, (2) that counsel whose integrity or competence is being impugned be informed of the allegations leveled against him and be given an opportunity to respond, and (3) that the motion reflect whether a complaint has been filed with appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal responsibilities, and if not, why not.

*Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988).  The BIA found, and the government does not dispute, that Morales met the *Lozada* requirements in this case.

removal proceeding, the movant must prove two things: (1) deficient performance—that "counsel's performance was deficient to the point that it impinged the fundamental fairness of the hearing"; and (2) prejudice—that "there is a reasonable probability that but for the attorney's error, the outcome of the proceedings would have been different." *Ali v. U.S. Att'y Gen.*, 643 F.3d 1324, 1329 (11th Cir. 2011). The BIA therefore does not abuse its discretion by denying a motion to reopen that fails to establish prejudice. *Dakane*, 399 F.3d at 1274. An applicant can establish prejudice by making a prima facie showing that she would have been eligible for the relief sought. *See id.* (citing with approval two sister circuit cases that held the same).

To establish eligibility for asylum, the applicant must show that she has "refugee" status by showing past persecution or a well-founded fear of future persecution on account of a statutorily protected ground, including race, religion, nationality, political opinion, or membership in a particular social group. *See Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1256 (11th Cir. 2007). An applicant for withholding of removal must show that is it more likely than not "that her 'life or freedom would be threatened in that country because of [her] race, religion, nationality, membership in a particular social group, or political opinion.'" *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005) (quoting 8 U.S.C. § 1231(b)(3)(A)). Eligibility for CAT relief requires a showing that it is

9

more likely than not that the applicant would be tortured if returned to the proposed country of removal and that the torture is by the government or with its acquiescence. *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004).

## III.

The BIA did not abuse its discretion by denying Morales's motion to reopen her removal proceedings based on ineffective assistance of counsel. Even assuming without deciding that Morales is entitled to equitable tolling for her motion to reopen, Morales has failed to make any showing that she was prejudiced by former counsel's ineffectiveness.

We first address the motion to reopen as it relates to Morales's applications for asylum and withholding of removal, which both require a showing of a nexus to a protected ground. In the original removal proceeding, the IJ found that Morales was credible but that she failed to establish a connection between her experiences and a protected ground. According to the IJ, her testimony reflected that she had been targeted due to her potential knowledge, through her brother, of corruption at the NPC, not because of her membership in a particular social group (her family). Thus, the key finding underlying the denial of asylum and withholding of removal was the lack of a nexus, not Morales's credibility or the lack of corroborating evidence. Then, in denying the motion to reopen, the BIA

10

found that Morales had presented no evidence or argument, beyond what was before the IJ, indicating that the harm she feared was on account of a protected ground. We agree with the BIA.

Morales's motion to reopen does not show that, but for counsel's ineffective assistance, she could have established a nexus to a protected ground. She alleges that counsel failed to prepare her for the hearing, asked "random" questions at the hearing, and failed to present any evidence from Morales's sister. These deficiencies largely go to the credibility and completeness of Morales's story. But the IJ found Morales to be credible and accepted her testimony. And Morales does not identify any additional evidence that could have been elicited with better preparation or questioning, nor does she suggest that her sister's testimony would have been anything other than corroborative of her and her husband's own credible testimony. The affidavit attached to her motion to reopen merely stated that her sister "knew the entire story of what happened to our brother and could help prove that I was telling the truth." Because the IJ found Morales to be credible, her allegations of ineffective assistance relating to credibility and corroboration do not establish a reasonable probability that she could have established eligibility for relief.

Morales's other allegations concern potential gaps in the evidence, but they likewise fail to show that counsel's alleged deficiencies prejudiced her applications

11

for asylum or withholding of removal.  Morales broadly asserts that her attorney failed to provide the court with sufficient evidence that she would be targeted in the future based on her family membership, but she identifies no evidence or testimony that was not presented to the IJ or the BIA that could have been used to meet her burden.  An unsupported assertion that her attorney could have done more to prove her claims is insufficient to show prejudice.

Morales also faults counsel for failing to establish a connection between her brother's murder and the Honduran government, but, again, she identifies no evidence on that issue beyond what was before the IJ at the hearing.  Contrary to her contention, her attorney did introduce a letter showing that Morales's brother worked for a subsidiary of the government, and the IJ accepted it.  Additionally, the IJ accepted Morales's and her husband's testimony that her brother was killed by a man who oversaw drug deliveries for the company owned by the sub-director of the national police.  But despite this evidence, the IJ concluded that her brother's murder was due to a criminal act related to his knowledge of corruption at the NPC, not persecution based on his family membership, and nothing offered by Morales in her motion to reopen or her affidavit challenges that conclusion.

For these reasons, Morales did not show that "there is a reasonable probability that but for the attorney's error, the outcome of the proceedings would have been different."  *See Ali*, 643 F.3d at 1329.  In particular, Morales's motion to

12

reopen does not indicate how she could have established the required nexus to a protected ground for purposes of her applications for asylum and withholding of removal. *See Dakane*, 399 F.3d at 1274. Accordingly, the BIA did not abuse its discretion in denying her motion to reopen for failure to demonstrate "that the harm she fears would be on account of one of the protected grounds."

As for her application for CAT relief, the BIA likewise did not abuse its discretion in denying Morales's motion to reopen. In denying her CAT application, the IJ found that, while the coyote may have worked for the sub-director of the national police, Morales had not indicated or alleged that the sub-director "was in any way involved with the murder of her brother and would threaten her," so there was no evidence that the government of Honduras would torture or acquiesce in the torture of her. *See Sanchez*, 369 F.3d at 1242. Nothing in Morales's motion to reopen challenges that finding. As we have explained above, while Morales faults former counsel for failing to establish a connection between her brother's murder and the Honduran government, she identifies no evidence on that issue beyond what was before the IJ at the hearing. Accordingly, the BIA did not abuse its discretion in finding that there was no reasonable probability of a different result.

**IV.**

13

In sum, Morales has not shown that she was prejudiced by her former counsel's alleged deficiencies in handling her applications for asylum, withholding of removal, and CAT relief.  *See Dakane*, 399 F.3d at 1274.  The BIA therefore did not abuse its discretion in denying her motion to reopen, *see Jiang*, 568 F.3d at 1256, so we deny her petition for review.

**PETITION DENIED.**