**FOR PUBLICATION**

# In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 24-13788

Non-Argument Calendar

————————————

GINNA ALEJANDRA GUTIERREZ-MIKAN,
DAVID E. BENAVIDES GUTIERREZ,

*Petitioners,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A220-283-707

————————————

Before NEWSOM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Ginna Alejandra Gutierrez-Mikan petitions for review of the Board of Immigration Appeals's dismissal of her appeal from an

immigration judge's order denying her application for asylum, withholding of removal, and protection under the Convention Against Torture.  After careful review, we deny her petition.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Gutierrez-Mikan and her son are Colombian nationals who entered the United States in July 2021.  Shortly after they did so, the Department of Homeland Security issued them notices to appear at a deportation hearing before an immigration judge.  At the hearing, Gutierrez-Mikan conceded she was removable, but claimed asylum, withholding of removal, and relief under the Convention.[1]

Gutierrez-Mikan testified that, for about twenty years, she and her family had been persecuted by the Revolutionary Armed Forces of Colombia, a group of violent guerillas in Colombia.  After her family refused to pay extortion money to the FARC, the guerillas raped her, burned the family's vehicle, and killed two of her uncles who tried to investigate and oppose FARC.  Despite the family's efforts to escape FARC by moving around Colombia, the guerillas continued to discover their location and harass and threaten them with phone calls and notes.  The family reported the murders and the threatening notes and phone calls to Colombian police.

---

[1] Gutierrez-Mikan's son, David Estaban Benavides Gutierrez, had a derivative claim for asylum, but only Gutierrez-Mikan had claims for withholding of removal and for relief under the Convention.  We use Gutierrez-Mikan as shorthand for her and, where applicable, her son as a derivative claimant.

The police took their reports and placed the family on a database of victims of armed conflict, but FARC continued to harass the family, including by robbing their home. The family reported the robbery to the police and continued to move frequently, but they still received threatening texts and flyers in their home. Eventually, Gutierrez-Mikan and her son left their family in Colombia and fled to the United States, crossing the border without permission.

The immigration judge denied Gutierrez-Mikan's application. He credited Gutierrez-Mikan's testimony but concluded that she was not entitled to the relief she sought. As to her claims for asylum and withholding of removal, the immigration judge found that Gutierrez-Mikan hadn't established that she had been harmed because she was a member of "a valid cognizable particular social group." As to her claim for relief under the Convention, the immigration judge explained that Gutierrez-Mikan failed to show that she was "more likely than not to face harm amounting to torture by or with the consent or acquiescence of a public official in the government of Colombia." That was because the evidence didn't show "that Colombia would look the other way to potential harm" that FARC might inflict upon her.

Gutierrez-Mikan appealed to the board. She asserted an ineffective-assistance-of-counsel claim against the attorney who represented her at the deportation hearing because he didn't argue that she had been persecuted in Colombia on account of (1) resisting FARC or (2) her membership in the particular social group of

her nuclear family.  Gutierrez-Mikan also argued that the immigration judge had erred in denying her claim under the Convention.

As to the ineffective-assistance-of-counsel claim, the board concluded that Gutierrez-Mikan had failed to meet the procedural requirements.  Under *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988), she had to submit a bar complaint against the attorney or explain her decision not to do so, and she had to give the attorney notice and an opportunity to respond to the alleged mistakes.  The board found "no evidence" that Gutierrez-Mikan had fulfilled either of the *Lozada* requirements.  As to the claim for relief under the Convention, the board ruled that the immigration judge's decision "did not provide any analysis of the evidence of record in relation to the legal requirements."  So the board remanded the case to the immigration judge for "further proceedings."

On remand, the immigration judge considered the same record as before and found additional facts.  He found that Colombia had not retaliated against Gutierrez-Mikan or her family for reporting FARC members' activities, that Colombia had entered into peace accords with FARC, that Colombia outlawed membership in FARC, and that Colombia was "attempting to combat the FARC."  Thus, Gutierrez-Mikan had not shown that the Colombian government had consented or acquiesced to FARC's activities.  For that reason, Gutierrez-Mikan's Convention claim failed.

Gutierrez-Mikan again appealed the immigration judge's decision to the board.  She argued that the immigration judge had erred by not holding a new hearing or taking additional evidence.

And she asserted that the immigration judge erred by finding that she had not established her eligibility for relief under the Convention. The board rejected both arguments. First, it wrote that its previous remand for "further proceedings" did not require the immigration judge to set new hearings or take new testimony. Second, the board rejected "[Gutierrez-Mikan's] argument that [she] established a complete failure by Colombian authorities to provide adequate protection that demonstrates acquiescence" to torture. The board ruled that the immigration judge had cited sufficient evidence to conclude that Gutierrez-Mikan had not "demonstrate[d] a state nexus to torture."

## STANDARD OF REVIEW

Unless the board expressly adopts an immigration judge's opinion, we review only the board's decision. *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009). When the board explicitly agrees with the findings of the immigration judge, we review both decisions on those issues. *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). "We review de novo the conclusions of law by the [b]oard and [i]mmigration [j]udge, but we review findings of fact for substantial evidence to support them." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). Under the substantial evidence standard, "we must affirm if the decision . . . is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1237 (11th Cir. 2006) (quotation omitted).

## DISCUSSION

Gutierrez-Mikan raises two issues on appeal. First, she argues that the board erred in denying her ineffective-assistance-of-counsel claim because she did not meet *Lozada*'s procedural requirements. Second, she contends that the board erred in evaluating her claim under the Convention by applying the wrong standard and reaching the wrong result.

### Gutierrez-Mikan's ineffective-assistance-of-counsel claim

"[S]ubstantial, if not exact, compliance" with *Lozada's* requirements is necessary to pursue an ineffective-assistance-of-counsel claim in the immigration context. *See Ponce Flores v. U.S. Att'y Gen.*, 64 F.4th 1208, 1225 (11th Cir. 2023) (quoting *Dakane v. U.S. Att'y Gen.*, 399 F.3d 1269, 1274 (11th Cir. 2005)). Because Gutierrez-Mikan does not argue—and the record does not show—that she substantially complied with those requirements, the board did not err in dismissing her claim.

Instead of arguing about substantial compliance, Gutierrez-Mikan contends that *Lozada* (and our decisions following it) do not apply because of the Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). But Gutierrez-Mikan is wrong that *Loper Bright* undermined *Lozada* and our decisions applying it.

*Loper Bright* held that courts should no longer unthinkingly defer to agency interpretations of ambiguous statutes. *See id.* at 412–13. But *Lozada* was not based on the board's interpretation of the immigration code. Rather, the *Lozada* requirements for

24-13788            Opinion of the Court            7

immigration-court ineffective-assistance-of-counsel claims stem from the board's "broad" discretion in considering motions to reopen deportation orders. *See Gbaya v. U.S. Att'y Gen.*, 342 F.3d 1219, 1223 (11th Cir. 2003); *see also Lonyem v. U.S. Att'y Gen.*, 352 F.3d 1338, 1342 (11th Cir. 2003) (explaining that administrative agencies are "free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties" (quoting *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978))). Because *Lozada* did not interpret an ambiguous immigration statute, *Loper Bright* does not impact *Lozada* or our decisions applying it.[2]

With *Lozada* still good law, Gutierrez-Mikan had to substantially comply with its requirements to show her counsel was ineffective. Because she didn't, the board did not err in denying her claim.

---

[2] Even if the *Lozada* requirements were based on an interpretation of the immigration code, the Supreme Court was clear that *Loper Bright* did "not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful . . . are still subject to statutory stare decisis despite [the Court's] change in interpretive methodology. Mere reliance on *Chevron* cannot constitute a special justification for overruling such a holding, because to say a precedent relied on *Chevron* is, at best, just an argument that the precedent was wrongly decided. That is not enough to justify overruling a statutory precedent." *Loper Bright*, 603 U.S. at 412. In other words, *Loper Bright*, by itself, would not be a sufficient reason to overrule our precedent applying the *Lozada* requirements to immigration-court ineffective-assistance-of-counsel claims.

*Gutierrez-Mikan's claim for relief under the Convention Against Torture*

As to her claim for relief under the Convention Against Torture, Gutierrez-Mikan says there are two reasons the board erred.

1.  The board did not err by concluding that Gutierrez-Mikan was <u>not entitled to relief under the Convention.</u>

First, Gutierrez-Mikan contends she was entitled to relief because "the record evidence clearly demonstrate[d] a likelihood" that she would be tortured if returned to Colombia.  An applicant is "entitled to protection under the Convention" if "the immigration judge determines that the alien is more likely than not to be tortured in the country of removal."  8 C.F.R. § 1208.16(c)(4).  Torture is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted . . . when such pain or suffering is inflicted by, or at the instigation of, or with the consent or acquiescence of" a public official or other person acting in an official capacity.  *Id.* § 1208.18(a)(1).  To acquiesce in activity constituting torture, an official must "prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity."  *Id.* § 1208.18(a)(7).

Here, substantial evidence supported the board's finding that the Colombian government did not and would not consent to or acquiesce in FARC's torture of Gutierrez-Mikan and her family. The evidence showed that the Colombian government negotiated peace accords with FARC, outlawed violent groups in the country, and documented FARC's violence by registering victims in a

government database.  The evidence showed that these efforts had some effect because FARC warned Gutierrez-Mikan and her family not to call the police and retaliated against them when they did. Because there was evidence in the record supporting the acquiescence finding, the board did not err in denying Gutierrez-Mikan's Convention claim.

2.  The board did not err because it applied the correct legal standard to Gutierrez-Mikan's claim under the Convention.

Gutierrez-Mikan also argues that the board got the law wrong when it wrote that it did not agree that there was "a complete failure by Colombian authorities to provide adequate protection that demonstrate[d] governmental acquiescence or willful blindness to torture."  Requiring a "complete failure" to protect, she argues, holds "[her] to an improperly heightened standard to establish" that the Colombian government acquiesced in her persecution by FARC.

But the board did not apply an incorrect standard to Gutierrez-Mikan's claim.  The "complete failure" language was the board's description of Gutierrez-Mikan's arguments on appeal. Although the board referenced her arguments about "a complete failure by Colombian authorities to provide adequate protection" and "authorities simply ignored reports of harm by the FARC," in the end, the board adopted the immigration judge's finding that the Colombian government did not acquiesce to FARC violence.  And the adopted finding comes straight from the immigration regulations defining the elements of a Convention claim.  *See* 8 C.F.R.

10                     Opinion of the Court                     24-13788

§ 1208.18(a)(1).    Because the board adopted the immigration judge's analysis under the correct legal standard, it did not apply an improper standard to Gutierrez-Mikan's claim under the Convention.

**PETITION DENIED.**