[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 28, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-11907
Non-Argument Calendar

_____

Agency No. A78-411-252

JAVIER ALFONSO MONTENEGRO,
JAIRO ALFONSO MONTENEGRO,
ESTHER MONTENEGRO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

No. 08-17081
Non-Argument Calendar

_____

Agency Nos. A079-476-470
A079-476-471

JAIRO ALFONSO MONTENEGRO,
ESTHER MONTENEGRO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals

_____

(July 28, 2009)

Before BIRCH, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Jairo Montenegro and his wife, Esther Montenegro, who is a derivative applicant on Montenegro's asylum application, seek review in consolidated petitions of the Board of Immigration Appeals's ("BIA") order, affirming the immigration judge's ("IJ") denial of their application for asylum, 8 U.S.C. § 1158, withholding of removal, 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c), and of the BIA's denial of their motion to reopen.[1]  On appeal, Montenegro argues: (1) the BIA erred in denying him asylum, withholding of removal and CAT relief; and (2) the BIA abused its

_____

[1] Javier Montenegro, the Montenegro's son, filed a separate application for asylum, withholding of removal, and CAT relief, and his application was consolidated with his parent's by the IJ.  However, Javier returned to Colombia before the conclusion of these proceedings.

2

discretion in denying his motion to reopen, as he presented "more than sufficient evidence" to establish a prima facie case of eligibility for asylum or withholding of removal. After careful review, we deny the petitions.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Id. Here, the BIA adopted the IJ's reasoning while also adding its own explanations, and, therefore, we review both the IJ's and the BIA's decisions.

To the extent the IJ's and BIA's decisions are based on legal determinations, our review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). We review factual determinations, however, under the "highly deferential substantial evidence test," which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc). "Findings of fact made by the [IJ] may be reversed by [us] only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006) (alterations and quotation omitted). We review the BIA's denial of a motion to

3

reopen for an abuse of discretion, and "the BIA's discretion is quite broad." Gbaya v. U.S. Att'y Gen., 342 F.3d 1219, 1220 (11th Cir. 2003) (quotation omitted).

First, we are unpersuaded by Montenegro's claim that the BIA erred in denying him asylum, withholding of removal, and CAT relief. An alien may receive asylum if he proves that he is a "refugee," which is defined as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230 (11th Cir. 2005) (quoting 8 U.S.C. § 1101(a)(42)(A)) (emphases omitted). "The asylum applicant must establish eligibility for asylum by offering 'credible, direct, and specific evidence in the record.'" Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). "Uncorroborated but credible testimony from the applicant may be sufficient alone to sustain the burden of proof for asylum or withholding of removal." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818-19 (11th Cir. 2004).

Accordingly, to be eligible for asylum, "the alien must, with credible evidence, establish (1) past persecution on account of [his] political opinion or any other protected ground, or (2) a 'well-founded fear' that [his] political opinion or any other protected ground will cause future persecution." Sepulveda, 401 F.3d

4

at 1230-31 (citing 8 C.F.R. § 1208.13(a) and (b)). Although the Immigration and Nationality Act ("INA") does not define persecution, we have recognized that "persecution" is "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." Id. at 1231 (quotations and bracket omitted). We have held that threats alone do not give rise to a persecution-based claim for relief. Silva, 448 F.3d at 1237-39.

Moreover the combination of verbal threats and a minor beating do not amount to persecution. Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008) (alien's claim that police officers beat him and detained him for 36 hours did not compel the conclusion that the alien established persecution). We also have held that neither threatening phone calls nor condolence notes are sufficient to establish persecution. See Sepulveda, 401 F.3d at 1231 ("menacing telephone calls and threats to [an alien] . . . do not rise to the level of past persecution"); see also Silva, 448 F.3d at 1237. Nevertheless, we have found persecution where, despite enduring no "significant physical attacks," an alien received numerous death threats, was dragged by her hair out of her vehicle, and was kidnapped and beaten. De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1009-10 (11th Cir. 2008).

"A showing of past persecution creates a presumption of a 'well-founded fear,' subject to rebuttal by the [government]." Sepulveda, 401 F.3d at 1231 (citing

8 C.F.R. § 208.13(b)(1)). If an alien does not establish past persecution, he bears the burden of showing that it is more likely than not that he will suffer persecution on the basis of the protected ground, and he would not be able to avoid persecution by relocating to another part of his country, if, under all of the circumstances, it would be reasonable to expect him to do so. 8 C.F.R. § 208.16(b)(2), (b)(3).

Withholding of removal may be granted if the alien establishes that, if returned to his country, his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3). The burden of proof for an applicant seeking withholding of removal is higher than the burden imposed on an asylum applicant. Al Najjar, 257 F.3d at 1303. Accordingly, where a petitioner fails to establish eligibility for asylum, he likewise fails to establish entitlement to withholding of removal. Silva, 448 F.3d at 1243.

Eligibility for CAT relief requires the applicant to establish that it is more likely than not that he would be tortured if returned to the proposed country of removal. 8 C.F.R. § 208.16(c)(2). The CAT defines torture as the intentional infliction of "severe pain or suffering." See 8 C.F.R. § 208.18(a)(1). To obtain CAT relief, the alien must demonstrate that the torture would be inflicted by the government or with the government's acquiescence, i.e., the government would be aware of the torture and fail to intervene. Reyes-Sanchez v. U.S. Att'y Gen.,

6

369 F.3d 1239, 1242 (11th Cir. 2004). The burden of proof for an alien seeking withholding of removal under the CAT, like the burden for an alien seeking withholding of removal under the INA, is higher than the burden for showing entitlement to asylum. Al Najjar, 257 F.3d at 1303. Thus, where the alien is unable to meet the less stringent standard for asylum, his claim for CAT relief necessarily fails. Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1292 (11th Cir. 2006).

In this case, substantial evidence supports the IJ's and BIA's findings that Montenegro was not eligible for asylum, withholding of removal, or CAT relief. With regard to asylum, while Montenegro established that he was threatened on account of his political opinion by the Revolutionary Armed Forces of Colombia ("FARC"), the verbal threats of which he complained were insufficient to rise to the level of persecution, as defined by our caselaw. See Silva, 448 F.3d at 1237-39; Sepulveda, 401 F.3d at 1231. Montenegro did not allege that he was kidnaped, beaten, or otherwise subjected to any actions beyond in-person verbal threats. See De Santamaria, 525 F.3d at 1009-10. The evidence therefore does not compel the conclusion that he experienced persecution. See Silva, 448 F.3d at 1236.

Further, substantial evidence supports the IJ's and BIA's conclusion that Montenegro did not establish that he had a well-founded fear of future persecution, particularly in light of the fact that he returned to Colombia for one week after having taken refuge in the United States, and two of his sons remained in

7

Colombia unharmed. Moreover, Montenegro had not experienced anything beyond mere harassment in the two years that he was threatened by the FARC while living in Colombia. As a result, the record does not compel the conclusion that Montenegro had a well-founded fear of persecution. See id.

Finally, since Montenegro did not establish past persecution, he had the burden of showing that he would be unable to avoid persecution by relocating to another part of Colombia. See 8 C.F.R. § 208.16(b)(2), (b)(3). Although the 2005 Country Report indicated that the FARC's presence in Colombia is country-wide, it does not compel reversal of the IJ's and BIA's conclusion that Montenegro failed to meet his burden, particularly where: (1) Montenegro did not try to relocate within Colombia before moving to the United States; (2) two of his sons lived safely in Colombia; and (3) he offered no basis for his conclusion that relocation was impossible beyond his personal belief that the FARC dominated Colombia. Consequently, we deny the petition with respect to Montenegro's asylum claim.

Because the burden of proof for an applicant seeking withholding of removal or CAT relief is higher than that for an applicant seeking asylum, and Montenegro failed to meet his burden for asylum, he necessarily failed to satisfy his burden for withholding of removal or CAT relief, and the IJ and BIA properly denied these claims. See Al Najjar, 257 F.3d at 1303; see also Zheng, 451 F.3d at 1292. The IJ's and BIA's denial of CAT relief also was proper on the additional basis that the

8

2005 Country Report supported the conclusion that the Colombian government does not acquiesce to the FARC's torture and killings. Accordingly, Montenegro did not meet his burden of showing that he would be tortured by the Colombian government, or with its acquiescence, if returned to Colombia, and the IJ and BIA properly denied CAT relief.

We also reject Montenegro's claim that the BIA abused its discretion in denying his motion to reopen. It is within the discretion of the BIA to deny a motion to reopen for at least three reasons: "(1) failure to establish a prima facie case [of eligibility for asylum]; (2) failure to introduce evidence that was material and previously unavailable; and (3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." Al Najjar, 257 F.3d at 1302. To establish a prima facie showing of a well-founded fear of future persecution, an asylum applicant must show that "[t]here is a reasonable possibility of suffering such persecution" if he is returned to his native country. 8 C.F.R. § 1208.13(b)(2)(i)(B). For withholding of removal, an applicant must demonstrate a "clear probability" of persecution if returned to their home country, which is a higher burden than that for asylum. INS v. Stevic, 467 U.S. 407, 424-25, 429 (1984).

Here, the BIA did not abuse its discretion in denying Montenegro's motion to reopen, as the documents that he submitted did not establish a prima facie case

of his eligibility for asylum or withholding of removal. None of the documents related to past persecution, and they were insufficient to demonstrate a well-founded fear of future persecution: (1) the condolence note allegedly sent by the FARC was an example of harassment and intimidation, but not persecution, especially since Montenegro received numerous other threats without experiencing any further action by the FARC, see Silva, 448 F.3d at 1237 (finding that a condolence note alone was insufficient to entitle the applicant to asylum); (2) the letters from the elected officials were based on knowledge garnered by "acquaintances" and did not reflect their own firsthand information or personal knowledge; (3) the 2007 Country Report did not contain any information regarding a specific threat to Montenegro or people who are similarly situated to him, and, thus, did not establish a "reasonable possibility" that he would be persecuted if returned to Colombia, see 8 C.F.R. § 1208.13(b)(2)(i)(B); and (4) the letter that Javier sent to Montenegro also did not establish this "reasonable possibility," as it was not specific regarding the threat from the FARC and did not point to any specific instances in which either Javier or Montenegro was threatened. Therefore, because none of the documents that Montenegro submitted established a prima facie case of eligibility for asylum, they also necessarily did not meet the higher burden of establishing a prima facie case of eligibility for withholding of removal, and the BIA did not abuse its broad discretion in denying the motion to reopen.

10

See Stevic, 467 U.S. at 424-25; see also Gbaya, 342 F.3d at 1220.

Lastly, regarding Montenegro's claim that the BIA failed to consider Javier's letter, this argument is contradicted by the BIA's order, which specifically referred to the letter and one of its claims. Moreover, even if the BIA did err, the error was harmless, because, as discussed above, Javier's letter was not specific as to the threat that the FARC posed to Montenegro. See 8 C.F.R. § 1208.13(b)(2)(i)(B).

**PETITIONS DENIED.**